IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| IN THE MATTER OF: | ) | CASE NO. BK06-41709 |
| | ) | |
| THOMAS STEVENS, | ) | CH. 13 |
| | ) | |
| Debtor. | ) | |

**MEMORANDUM**

Hearing was held in Lincoln, Nebraska, on April 4, 2007, on Confirmation of Debtor's Amended Chapter 13 Plan (Fil. #11), and an Objection filed by LincOne Federal Credit Union (Fil. #16). Justin Carter appeared for Debtor, and Joel Lonowski appeared for LincOne Federal Credit Union ("LincOne"). This memorandum contains findings of fact and conclusions of law required by Federal Rule of Bankruptcy Procedure 7052 and Federal Rule of Civil Procedure 52. This is a core proceeding as defined by 28 U.S.C. § 157(b)(2)(L).

This proceeding presents yet another twist on the applicability and meaning of the "hanging paragraph" of 11 U.S.C. § 1325(a)(9). Specifically, when multiple vehicles serve as collateral, can a debtor retain one vehicle and pay the portion of the loan attributable to that vehicle in full while surrendering the remaining collateral?

*Findings of Fact*

The parties agree that the underlying facts are not in dispute.

1.      LincOne is the holder of a secured claim (Claim #8-1) against Debtor in the amount of $21,358.98. In its proof of claim, LincOne asserts that the value of the collateral is $25,000.00.

2.      LincOne's claim is based on a promissory note and security agreement dated September 9, 2005 ("Loan"). The collateral for the Loan consists of a 1995 Ford van, a 2001 Chevrolet S-10 pickup, and 2005 Harley-Davidson motorcycle. The vehicles were acquired for Debtor's personal use.

3.      The proceeds of the Loan were used to pay in full a prior loan from LincOne made in 2001 to purchase the 2001 Chevrolet and another loan made by LincOne in February of 2005 to purchase the Harley. The Loan proceeds were also used to provide funds to purchase the Ford. Thus, the Loan proceeds were part new purchase-money and part refinance of prior purchase-money loans.

4.      The original purchase-money loan for the Chevrolet was made more than 910 days prior to bankruptcy filing. The original purchase-money loan for the Harley was made in 2005, which is within 910 days of bankruptcy filing. The current Loan evidencing LincOne's claim was made in September 2005, also within 910 days of bankruptcy filing.

5.   The parties agree that the value of the Harley-Davidson motorcycle is $8,430.00.

### *Discussion*

Under his plan, Debtor proposes to surrender the Ford and the Chevrolet in full satisfaction of the portion of the debt attributable to those vehicles. Debtor proposes to retain the Harley-Davidson and to pay its value ($8,430.00) over the life of the plan with interest at 9% per annum. LincOne argues that Debtor is trying to cram-down its claim in violation of the new "hanging paragraph" appended to the end of 11 U.S.C. § 1325(a)(9).

As part of the 2005 bankruptcy amendments, a new provision, commonly referred to as the "hanging paragraph" was added immediately following 11 U.S.C. § 1325(a)(9), which provides as follows:

> For purposes of paragraph (5), section 506 shall not apply to a claim described in that paragraph if the creditor has a purchase money security interest securing the debt that is the subject of the claim, the debt was incurred within the 910-day preceding the date of the filing of the petition, and the collateral for that debt consists of a motor vehicle . . . acquired for the personal use of the debtor . . . .

Section 506 provides that an allowed claim is secured to the extent of the value of the creditor's interest in the property. 11 U.S.C. § 506(a). Thus, a debtor cannot use the valuation provisions of § 506 to "cram down" the claim of a creditor having a purchase-money security interest securing a debt incurred within 910 days prior to filing where the collateral consists of a motor vehicle acquired for personal use of the debtor. Further, in this district and in the Eighth Circuit, the hanging paragraph has been interpreted to allow the collateral for a loan described in that paragraph to be surrendered in full satisfaction of the debt. *Capital One Auto Finance v. Osborn (In re Osborn),* ___ B.R. ___ , 2007 WL 542435 (B.A.P. 8th Cir. Feb. 23, 2007); *In re Maggett*, Case No. BK06-80573, 2006 WL 3478991 (Bankr. D. Neb. Oct. 19, 2006).

The plain language of 11 U.S.C. § 1325 provides some guidance in this proceeding. Specifically, the combined loan was clearly made within 910 days preceding the date of bankruptcy filing and the collateral does consist of a motor vehicle (actually three motor vehicles) acquired for personal use of Debtor. The parties do not dispute those facts. So, the threshold question becomes whether "the creditor has a purchase money security interest securing the debt that is the subject of the claim." Here, the parties agree that part of the Loan was used to purchase the Ford at the time of the consolidated loan in September 2005. The rest of the loan was used to refinance two prior purchase-money obligations, one of which was outside the 910 day pre-filing period.

The Bankruptcy Code does not define "purchase money security interest." So, bankruptcy courts have typically looked to state law for guidance. *See In re Price*, ___ B.R. ___ , 2007 WL 664534 (Bankr. E.D.N.C. Mar. 6, 2007). Although not necessarily controlling as to the definition of the term as used in the Bankruptcy Code, the state law definition is instructive. Under the Uniform Commercial Code as adopted in Nebraska, effective July 1, 2001, purchase-money security

interest is defined as follows: "A security interest in goods is a purchase-money security interest: (1) to the extent that the goods are purchase-money collateral with respect to that security interest . . . ." Section 9-103(b). Further, "purchase-money collateral" is defined as "goods or software that secures a purchase-money obligation incurred with respect to that collateral." Section 9-103(a)(2). "Purchase-money obligation" is defined as "an obligation of an obligor incurred as all or part of the price of the collateral or for value given to enable the debtor to acquire rights in or the use of the collateral if the value is in fact so used." Section 9-103(a)(2).

In addition to the foregoing definitions, Section 9-103(f) provides:

> A purchase-money security interest does not lose its status as such, even if:
> (1) the purchase-money collateral also secures an obligation that is not a purchase-money obligation;
> (2) collateral that is not purchase-money collateral also secures the purchase-money obligation; or
> (3) the purchase-money obligation has been renewed, refinanced, consolidated, or restructured.

According to paragraph 7.a. of the Official Comment to Section 9-103, the foregoing language of subparagraph (f) approves what courts have referred to as the "dual status rule." That is, a security interest may be part purchase-money and part non-purchase-money. That is in contrast to the "transformation rule" which provides that any cross-collateralization, refinancing, or the like destroys the purchase-money status. Interestingly, when Nebraska adopted the 2001 amendments to Article 9 of the UCC, the legislature intentionally deleted proposed language leading into subparagraph (f) which limited its applicability to transactions which are not consumer goods transactions. Thus, as enacted, this section applies to both consumer and non-consumer transactions.

Since a portion of the Loan proceeds was used to refinance a purchase-money security interest incurred within 910 days of filing (the Harley loan) and a portion was used to purchase the Ford, and both the Harley and the Ford constitute part of the collateral, this creditor "has a purchase money security interest securing the debt that is the subject of the claim" as described in 11 U.S.C. § 1325(a)(9). Therefore, the portions of the claim of LincOne representing funds advanced for the Ford and the Harley within 910 days of filing are not subject to bifurcation into secured and unsecured portions under 11 U.S.C. § 506. This Court recognizes that the foregoing appears to be at odds with other courts which have interpreted the "plain language" to require that the claim must be entirely secured by a purchase-money security interest rather than just a portion of it. *See, e.g., In re Peaslee*, ___ B.R. ___, 2006 WL 3759476 (Bankr. W.D.N.Y. Dec. 22, 2006); *In re Price*, ___ B.R. ___, 2007 WL 664534 (Bankr. E.D.N.C. Mar. 6, 2007); and *In re Westfall*, ___ B.R. ___, 2007 WL 981730 (Bankr. N.D. Ohio Mar. 30, 2007). However, such cases are not necessarily inconsistent since the version of Section 9-103 of the UCC enacted in the applicable jurisdictions for those cases appears to have included the language making subparagraph (f) (imposing the dual status rule) applicable only to non-consumer transactions and also included subparagraph (h) which allows the use of the transformation rule in consumer transactions. Thus, using the transformation rule, those courts found that the claim was not a purchase-money security interest. Both those

provisions were deleted by the Nebraska legislature, so a Nebraska court would use the dual status rule (and not the transformation rule) to find that a refinancing or consolidation does not destroy purchase-money security interest status as to the eligible portion of the Loan. This Court will follow the lead of the UCC as enacted in Nebraska.

Accordingly, 11 U.S.C. § 1325(a)(9) applies to the portion of LincOne's claim representing purchase-money security interests incurred within 910 days of filing; that is, the portion of the debt representing the purchase-money security interests for the Harley and the Ford. Debtor may either pay those portions in full under the plan or surrender the Harley and/or Ford for full satisfaction of the applicable claim amount. The remaining portion (secured by the Chevrolet) was a purchase-money security interest incurred outside of the 910-day window, so § 506 applies to such amount. Debtor may surrender such vehicle but valuation under § 506 will determine if LincOne retains an unsecured deficiency claim. Further, nothing in § 1325 appears to prevent Debtor from surrendering one vehicle with bifurcation of its value into secured and unsecured portions under § 506, and under § 1325(a)(9) surrendering another in full satisfaction of the portion of the claim attributable to such vehicle and paying in full the portion of the claim attributable to the retained vehicle. The loan documents attached to LincOne's proof of claim show the allocation of the funds among the three portions, so determining the current balance due on each portion at this time should be relatively easy.

Based on the foregoing, confirmation of Debtor's plan must be denied at this time. Debtor shall file an amended plan by April 30, 2007, which provides for the proper allocation and treatment of LincOne's claim consistent with this ruling.

Separate order to be filed.

DATED: April 9, 2007.

> BY THE COURT:
>
> /s/ Thomas L. Saladino
> United States Bankruptcy Judge

Notice given by the Court to:
    *Justin Carter
    Joel Lonowski
    Kathleen Laughlin
    U.S. Trustee

Movant(*) is responsible for giving notice to other parties if required by rule or statute.